**UNITED STATES of America for the Use of RESOURCES DEVELOPMENT, INC., a corporation, (formerly Ric-Wil, Incorporated), Plaintiff,**

v.

**BISON CONSTRUCTION CO., a corporation, and The Fidelity and Casualty Company of New York, a corporation, Defendants.**

**Civ. No. 3834.**

United States District Court
D. North Dakota,
Northeastern Division.

July 24, 1961.

Albert P. Hadley, of Ashman, Zeile, Portmann & Hadley, Cleveland, Ohio, and Paul K. Pancratz, of Whittlesey & Pancratz, Fargo, N. D., for plaintiff.

P. W. Lanier, Jr., and Frank T. Knox, of Lanier, Knox & Shermoen, Fargo, N. D., for defendants.

RONALD N. DAVIES, District Judge.

This action, submitted to the Court after a pre-trial conference and under a stipulation of facts, was commenced by the Use Plaintiff, Resources Development, Inc., formerly Ric-Wil, Incorporated, (and hereinafter Ric-Wil), pursuant to 40 U.S.C.A. §§ 270a and 270b, commonly referred to as the Miller Act, against Bison Construction Co., a corporation, (hereinafter Bison), and The Fidelity and Casualty Company of New York, a corporation, (hereinafter Fidelity), to recover an unpaid balance due for materials supplied in a construction project at the Grand Forks, North Dakota, Air Force Base.

On May 29, 1958, Bison entered into a contract with the Government for construction of utilities at the Air Base. A payment bond was executed the same

day with Bison as principal and Fidelity as surety.

Bison then subcontracted with the Sornsin Co. (hereinafter Sornsin) for installation of the HTW Underground Conduits and Supply and Return Mains, including expansion loops, all part of the utilities specified in the prime contract. The over-all distance the conduits were to travel and return was estimated at 4,030 feet. The plans and specifications listed the estimated quantity of materials needed for the conduit as 4,050 lineal feet, the additional 20 feet being allowed for end seals and leak plates. In addition 10 expansion loops were called for with other materials needed to complete the installation.

Before submitting a bid on the prime contract, Bison solicited bids from the subcontractors for the installation of the HTW conduits. Sornsin eventually was awarded the subcontract, having submitted a bid based on prices quoted by Ric-Wil for the materials necessary. Ric-Wil's proposal price was in the form of a total sum and was not broken down as to individual items except that a figure was quoted as the price of the 10 expansion loops which sum was included in the gross amount. Since the Government required that bids in the prime contract be broken down as to unit price, Sornsin, without consulting Ric-Wil, subtracted the quoted price of the expansion loops from the gross figure to arrive at what was believed to be the cost of the conduit. Then to determine the price per lineal foot, Sornsin divided the total footage.

After the prime and subcontracts had been awarded, the Government changed the specifications as to type of materials required for the conduits. Sornsin and Ric-Wil then renegotiated cost of materials, arriving at a total cost figure with no breakdown as to individual items. A purchase order was then submitted by Sornsin and accepted by Ric-Wil as follows:

"4050' 18" Ric-Wil insulated pipe incasing one 10" SBS pipe with 3" fiberglass insulation as per your pro- posal of July 10, 1958, including loops and misc. materials. All in accordance to the Corps of Engineers Modification #3 and plans and specifications.

"Total net price F.O.B. factory $103,969.99"

It is not disputed that Ric-Wil furnished, and Sornsin installed, all the materials necessary for the completion of the subcontract and that the project was accepted by the Government. The controversy here developed when the Government measured the installed system and paid Bison only for what it considered was the actual footage of conduit installed. The discrepancy between the estimated lineal feet of conduit and the final Government measurement came about by the Government's deducting the "W" dimensions of the loops from the over-all footage. A Contracting Officer's Opinion and Appeal was taken by Bison. The U. S. Army Corps of Engineers affirmed in a decision from which the following is quoted for a better understanding of what is involved here:

"a. *19–17. Measurement and Payment.* All measurements and payments will be based on completed work performed in strict accordance with the drawings and specifications \* \* \*.

"*a.* \* \* \*

"*b. Expansion Loops* will be measured by the unit and will be paid for at the contract unit price each for 'Expansion Loops'.

"*c. Underground Conduits, Supply and Return Mains* will be measured along the center line of the conduits of the various sizes from point of connection to existing manhole or inside face of new manhole to inside face of manhole wall, *excluding spaces occupied by expansion loops,* but including 'Z' and 'L' bends and underground road crossings and will be paid for at the contract unit price per lineal foot for 'HTW Underground Conduits, Supply and Return Mains', which price shall con-

stitute full compensation for the completed work including supply and return mains and all incidentals thereto.' (Emphasis added)

"b. Drawing No. AW–71–02–10, Sheet 5,[1] *Loop Detail for Conduit Enclosed Pipe* shows the detail for expansion loops and more particularly, the 'W' and 'H' dimensions * *. The 'W' dimension covers the major area at the top or 'arched' portion of the loop, while the 'H' dimension applies to the sides of, and a small portion of, the top of the loop. This loop is composed of two separate pipes, the Supply Line, and the Return Line.

"7. By letter to the Area Engineer dated 28 January 1960 * * * the Contractor expressed dissatisfaction with the measurement of 1,848 L.F. allowed by the Government for payment purposes for the lateral run of the HTW Underground Conduit. It was contended that under Item No. 20 of the Unit Price Schedule, and also under the revised price schedule of Modification No. 3, a total of 2,025 lineal feet was shown and that this figure should prevail. In addition Contractor contended that that portion of Specification Paragraph 19–17c which excludes spaces occupied by expansion loops from lateral measurement, did not exclude the 'W' dimension from such measurement computation. The Contractor took the position that the loop deduction should carry only the 'H' dimension. It was suggested by Contractor that a clause in Specification Paragraph 19–17c, heretofore referred to, which states that 'Z' and 'L' bends are to be included in the 'lateral run' measurement might be interpreted to exclude the 'W' dimension from being considered as part of the expansion loop unit inasmuch as the expansion loops are allegedly made up of two 'Z' bends. * * * The subcontractor further alleged that the 'Z' bend interpretation was suggested originally by Corps of Engineers personnel, apparently from the field office."

It is not disputed that the unpaid balance due Ric-Wil is $11,908.84, the sum here in controversy. It was Bison's defense that Ric-Wil did not, in fact, supply 4,050 lineal feet of conduit but only 3,696 lineal feet and should be paid accordingly. Ric-Wil contended, of course, that it contracted to supply materials sufficient to complete the project at a stated price and, having satisfactorily done so, is entitled to be paid in full for its work.

At the time Ric-Wil submitted the proposal price to Sornsin and at the time of renegotiation of the contract price, the plans and specifications were readily available to all parties and called for an estimated 2,025 lineal feet of conduit each way for the supply and return mains. No one argues the fact that this is the actual distance between the two points. It was only after the Government deducted the width of the expansion loops that the distances were reduced to 1,846 lineal feet each way.

This Court finds that Ric-Wil contracted to supply the necessary materials for the conduit installation and that it performed its contract and is entitled to be paid the price agreed upon. All parties at the time of contracting were aware just what materials would be needed irrespective of the method of measurement used to determine the footage of the conduit.

The Court finds that the United States of America for the Use of Resources Development, Inc., a corporation, (formerly Ric-Wil, Incorporated), is entitled to a judgment against Bison Construction Co., a corporation, and The Fidelity and Casualty Company of New York, a corporation, jointly and severally, in the sum of $11,908.84 together with interest at the rate of four per centum per annum from January 19, 1960, plus Use

"1. Revised Modification No. 3 Drawing did not change loop detail"

Plaintiff's costs and disbursements to be fixed and assessed by the Clerk of this Court.

An appropriate form of judgment will be prepared by the attorneys for the plaintiff and transmitted to the Clerk of this Court.

This memorandum is considered compliance with F.R.Civ.P., Rule 52(a), 28 U.S.C.A.

It is so ordered.